IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>BARNES BAY DEVELOPMENT LTD,<br><br>Debtors. | : | Bankruptcy Case No. 11-10792 (PJW) et al., |
| SOF-VIII-HOTEL II ANGUILLA HOLDINGS LLC,<br><br>Appellant,<br><br>v.<br><br>AKIN GUMP STRAUSS HAUER & FELD LLP, et al.,<br><br>Appellees. | : | Civil Action No. 12-60-RGA |

| | | |
|---|---|---|
| IN RE:<br><br>BARNES BAY DEVELOPMENT LTD,<br><br>Debtors. | : | Bankruptcy Case No. 11-10792 (PJW) et al., |
| BROWN RUDNICK LLP,<br><br>Appellant,<br><br>v.<br><br>SOF-VIII-HOTEL II ANGUILLA HOLDINGS LLC,<br><br>Appellee. | : | Civil Action No. 12-61-RGA<br>(Consolidated) |

# MEMORANDUM OPINION

Matthew P. Ward, Esq., Womble Carlyle Sandridge & Rice LLP, Wilmington, Delaware; Charles R. Gibbs, Esq. (argued), Akin Gump Strauss Hauer & Feld LLP, Dallas, Texas; Andrew Dash, Esq. (argued), Brown Rudnick LLP, New York, New York; Attorneys for Appellants in Nos. 12-61, 12-62, & 12-64, and for Appellees in No. 12-60.

Stuart M. Brown, Esq. (argued), DLA Piper LLP, Wilmington, Delaware; Richard A. Chesley, Esq. (argued), DLA Piper LLP, Chicago, Illinois; Attorneys for SOF-VIII-Hotel II Anguilla Holdings, L.L.C.

September 11, 2012
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

This case consists of four appeals from two related orders of the Bankruptcy Court. In No. 12-60, SOF appeals from the "Omnibus Order Approving Final Fee Applications." (Bkr. Case No. 11-10792, D.I. 926).[1] In Nos. 12-61, 12-62, and 12-64, three law firms appeal from the "Order Denying Motions of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order Determining the Scope of the Carve-Out." (D.I. 925).

Jurisdiction exists in this Court over the four appeals. 11 U.S.C. §158(a)(1).

The standard of review in No. 12-60 is abuse of discretion. *See In re Lan Associates XI, L.P.*, 192 F.3d 109, 122 (3d Cir. 1999) ("broad discretion"). The standard of review in the other three is plenary. *See In re Insilco Technologies, Inc.*, 480 F.3d 212, 215 n.7 (3d Cir. 2007).

The appeal in No. 12-60 is in the nature of a protective appeal, and thus it makes sense to start with the three law firm appeals. The law firm appeals have consolidated briefing, and there are no individual issues in the three appeals.

The background is relatively complex, and, except as necessary to frame the issues in the appeal, will not be set forth. The debtors filed chapter 11 petitions on March 17, 2011. There was extensive litigation in a very short time. On September 23, 2011, the Bankruptcy Court denied confirmation of the chapter 11 plan. The bankruptcy case was dismissed on December 2, 2011. (D.I. 931).

The law firms represented the debtors and the "Official Committee of Unsecured Creditors." By virtue of the Order from which they appealed, the Bankruptcy Court ordered that SOF pay them (and one law firm that did not appeal) $27,802 in satisfaction of all remaining

[1] Unless otherwise noted, D.I. citations are to the record in the Bankruptcy Court.

professional fees. The three law firms had asked for approximately $2,850,000.[2] They had already received about $6,000,000. (D.I. 926, Exh. A).

The basis for the Bankruptcy Court's ruling was the "Final Order (A) Authorizing Debtors (i) to Obtain Post-Petition Financing and (ii) to Use Cash Collateral; (B) Granting Liens and Providing Super-Priority Claims; and (C) Granting Adequate Protection to Pre-Petition Secured Parties" ("Final DIP Order"). (D.I. 389). It has two provisions that are at issue.

In ¶1(b), the Order provides in relevant part:

> The Debtors are hereby authorized to incur the DIP Obligations and close the DIP Loan solely in accordance with and pursuant to the terms and provisions of the Budget, this Final Order and the Loan Documents. Notwithstanding anything to the contrary in this Paragraph 1(b), however, the Debtors are hereby authorized, subject to the Budget, to incur the DIP Loan to pay the Carve-Out when due and payable.

In ¶5, the Order provides in relevant part:

> [The carve out is] an amount not to exceed the sum of
> (a) the lesser of
> (i) the Budget line items for Professional Fees of Debtors or Committee incurred prior to the earlier of
> (A) the occurrence of an Event of Default or
> (B) the Termination Date, or
> (ii) the accrued and unpaid fees and expenses of the respective retained professionals of the Debtors and Committee allowed pursuant to the Order Granting Debtors' Motion for an Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals entered by the Court on April 12, 2011 [D.I. 100], incurred prior to the earlier of
> (A) the occurrence of an Event of Default or
> (B) the Termination Date,
> (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), and
> (c) any fees payable to the Clerk [etc].

---

[2] Opening Brief of the Appellant Professionals, p. 4; Brief of Appellee SOF etc., p.10. From other documents, I would have concluded that the amount was $1,731,000. (D.I. 926, Exh. A). The Bankruptcy Court was told that the amount for all the professionals was $4,100,000. (D.I. 951, p.20). For purposes of these appeals, the exact amount is immaterial.

It is worth setting forth the interpretations of these provisions that the parties have advanced. SOF's position is that the carve-out provisions mean that the law firms' total fees would be either the budgeted amount ($6,332,895) or the final allowed amount, whichever is less. The law firms' position is that the carve-out provisions mean that the law firms' total fees would be the sum of what they had been paid as interim fees plus the lesser of either the budgeted amount (which, in the Bankruptcy Court, they argued was $11,543,000) or any amounts that were allowed in addition to what they had already been paid.

**The Budgeted Amount.**

The Bankruptcy Court decided that the "Budget line items for Professional Fees" was $6,332,895. I believe that was a correct reading of the Final DIP Order.

The Final DIP Order had attached to it as Exhibit A two documents: one page self-identified as "13 Week Cash Flow Forecast" and the ninety-five page "$12,500,000.00 Senior Secured Superpriority Debtor-in-Possession Term Loan and Security Agreement and Stipulation to Use of Cash Collateral" (hereinafter, "Financing Agreement"). (D.I. 389, Exh. A). The Cash Flow Forecast is an interesting document. Despite its caption, it has eighteen columns – fifteen weeks (through the end of July), followed by two months (August and September), followed by a column captioned "Extended Forecast Total." The Cash Flow Forecast has an "Extended Forecast Total" for "Legal and Professional Fees – Bankruptcy" of $6,332,895. The "ending cash balance" in the "Extended Forecast Total" is a negative cash flow of $12,521,709, which is about an exact match for the maximum of the DIP loan ($12,500,000) authorized by the Final DIP Order. (*Id.*, p.1 n.3). In other words, the only monies that the debtors would have to run the business through September 2011 – which was when the debtors and SOF expected the

debtors to come out of bankruptcy with a confirmed chapter 11 plan – provided the debtors with sufficient financing based on a "forecast" of paying $6,332,895 to the law firms.

At the time when the Final DIP Order was presented to the Bankruptcy Court, counsel for one of the law firms stated, "[T]he carve-out is currently set up to be the accrued – the lesser of accrued budgeted expenses or allowed expenses through the termination date."[3] (D.I. 415, p.25). Moments later, counsel continued, "And as the order approving the DIP financing has attached to it the budget and then right behind the budget is the extensive credit agreement." (*Id.*, p.27). The record reflects that the only thing that counsel could have been referring to as "the budget" was the "13 Week Cash Flow Forecast."

In the Bankruptcy Court, the law firms argued that the "Budget line items" was a significantly greater number – $10,900,000 (D.I. 951, p.18) or $11,543,000 (*Id.*, p.28). The argument suffered from being based on documents that were not part of the Final DIP Order, and being inconsistent with the only budgetary document that was provided with the order. At oral argument before this Court, the law firms did not press the point.

Thus, I believe that the Bankruptcy Court's determination that the "Budget line items" was $6,332,895 was a correct reading of the Final DIP Order.

**The Accrued and Unpaid Allowed Fees.**

There has been much argument in both the Bankruptcy Court and this Court about the interpretation of "the accrued and unpaid fees . . ." portion of the carve-out. The Bankruptcy Court held that it was "intended to cover the fees that have been allowed," which the Bankruptcy

[3] The law firms stated that the "termination date" was September 30, 2011. (D.I. 951, p.19; *see* D.I. 389, ¶ 6(a) (defining "termination date")). At oral argument in this Court, SOF was non-committal on what the "termination date" was. For purposes of these appeals, the exact "termination date" is not an issue.

Court held would be a significantly greater number than "6.33 million because I'm going to allow the fees that are being addressed in today's agenda." (D.I. 951, p.59). Thus, since $6.33 million was the lesser of the two alternatives, the carve-out amount for professional fees was $6.33 million. And, since almost all of that amount had been paid out already pursuant to interim payment orders, there was only $27,802 left to be paid.

In support of the Bankruptcy Court's decision, SOF cites to the Financing Agreement. (D.I. 389, Exh. A). The Financing Agreement's recitation of the Carve-Out differed slightly from the recitation in the Final DIP Order to which it was attached. The Financing Agreement, as relevant to professional fees, described the carve-out as being the lesser of "(i) the DIP Budget line items for Professional Fees of Debtors or Committee incurred prior to the earlier of [one of the dates], or (ii) the allowed fees and expenses of the respective retained professionals of Debtors and any statutory committee incurred prior to the earlier of [one of the dates]." (D.I. 389, Exh. A, Financing Agreement, p. 30, § 2.21.2). SOF argues that this makes clear that the law firms were either to get the budgeted amount or the allowed amount, whichever was less. The law firms respond that the Final DIP Order provides that in the event of a conflict between it and the Financing Agreement, the Final DIP Order controls. (D.I. 389, ¶ 12(b)). The corollary to the law firms's argument is that implicit in ¶ 12(b) is the concept that the provisions of the Final DIP Order and the Financing Agreement (as well as the Motion and the Interim DIP Order) are intended to be consistent.

This Court thus believes the Interim DIP Order needs to be considered. (D.I. 132). That order was entered about three months before the Final DIP Order, in connection with financing of $5,000,000. The Interim DIP Order had a simpler carve-out, which provided for "$850,000 for the allowed fees and expenses of the retained professionals of the Debtors and any statutory

committee, whether incurred prior to or following an Event of Default." (D.I. 132, ¶ 4). The carve-out in the Interim DIP Order meant that the fees for the law firms were a fixed amount – $850,000. There would be consistency in interpreting the Final DIP Order to be that the fees for the law firms were to be the lesser of the budgeted, or fixed, amount ($6.33 million) or the allowed amount, whatever that might turn out to be. The law firm's argument, in response, is essentially two-fold. One, that is not what the language of the Final DIP Order says. Two, it would make no sense for the law firms to have agreed to something that was going to result in them having to work for free.[4]

The law firms' interpretation of the Final DIP Order is that they are to be paid, in addition to what they had already been paid, either $6.33 million, or any amount which they had earned as of the termination date but which they had not been paid (*i.e.,* $2,850,000), whichever was less. At the outset, two items that provide context for considering the law firms' argument are that: (1) the carve-out was not going to come into play at all if the Chapter 11 plan was confirmed; it only came into play in event of the failure of the proposed plan; and (2) under the law firms' proposed interpretation, SOF could end up having to pay professional fees of up to twice the budgeted amount. At the time of the Final DIP Order, there were prospects that the litigation was winding down and that the Chapter 11 plan would be confirmed. (S*ee* D.I. 415, p. 9: "I'm very happy to report that rampant peace has broken out in this case."). In any event, the law firms (and SOF) argued to the Bankruptcy Court that the Final DIP Order was "unambiguous" or "clear." (D.I. 951, pp. 21 [law firm lawyer], 29 [different law firm lawyer], 48

[4] This second argument relies upon facts that are not in the record. I believe it would only come into play if there was a determination that the Final DIP Order was ambiguous, and the Bankruptcy Court were to take extrinsic evidence to determine the parties' intent. Thus, I do not address it any further.

[SOF lawyer]). They continue to so argue in this Court. (Opening Brief of Appellant Professionals, p.11; Brief of Appellee SOF etc., p.10).

The law firms concentrate on the language of the ¶ 5(a)(ii) of the Final DIP Order. It describes the amount as "accrued and unpaid" professional fees "allowed pursuant to the [Interim Fees Order, D.I. 100]." The law firms argue that the plain meaning of this phrase is earned and unpaid fees that are payable under the Interim Fees Order; they argue that the Bankruptcy Court's interpretation of the phrase is professional fees allowed by the Bankruptcy Court at the conclusion of the case. The law firms cite Black's Law Dictionary for the proposition that "accrued" means "earned but not yet paid." Opening Brief of the Appellant Professionals, p.12. They do not address the redundancy that would ensue – the amount would be "earned but not yet paid and unpaid" professional fees. They also do not address a second redundancy: the limitation that the fees have to be incurred before the termination date. In other words, the law firms' interpretation appears to be that "accrued and unpaid fees incurred before the termination date" means the same thing as "unpaid fees incurred before the termination date."

Inasmuch as all parties agreed the Final DIP Order was unambiguous, no one requested an evidentiary hearing, and there was no testimony before the Bankruptcy Court. The record makes clear that the parties fully expected the matter to be resolved as a matter of law.[5] The

---

[5] On appeal, the law firms argue that if the Final DIP Order is found to be ambiguous, the matter should be remanded for an evidentiary hearing. *See* Opening Brief of the Appellant Professionals, pp.18-20. While I do not need to reach it, it is not clear that the law firms have not waived the right to present evidence. The two most relevant cases the law firms cite both discuss consulting extrinsic evidence when a party has requested the trial court do so. *See Baldwin v. University of Pittsburgh Med. Ctr. (UPMC)*, 636 F.3d 69, 78 (3d Cir. 2011) ("when a contract term is reasonably argued to be ambiguous, the better approach . . . is to allow the parties to proffer evidence . . . ."); *In re New Valley Corp.*, 89 F.3d 143, 150 (3d Cir. 1996) (the trial court must "hear the proffer of the parties and consider extrinsic

attorneys nevertheless bolstered their presentations with factual recitations that could only be considered unsworn testimony.[6] There is no reason to believe that the unsworn factual assertions in any way influenced the Bankruptcy Court. The Bankruptcy Court's conclusion was that:

> I think that subpart (ii) is inartfully drafted. But I think that it's intended to cover the fees that have been allowed. Accrued and unpaid is not the end of the definition of fees. It's accrued and unpaid fees and expenses by the debtor and the committee allowed by the Court. And that hasn't happened yet.

(D.I. 951, p. 59).

I agree with the Bankruptcy Court that subpart (ii) is "inartfully drafted." It is not an easy task to parse the language of subpart (ii) so as to interpret it in a convincing way that gives independent meaning to each of the terms used to modify "fees." Black's Law Dictionary has a host of definitions relating to "accrued." The most common is "earned but not yet paid." Black's Law Dictionary, 9th ed. (2009) (on-line). Given the fact that it appears in a phrase that is "accrued and unpaid fees and expenses," it makes more sense to interpret it consistently with the other place where it is set forth, that is, the Financing Agreement, where it is clear that what is meant is "allowed fees and expenses." Thus, while "accrued" might be interpreted differently in a different context, the most plausible reading of subpart (ii), in this context, is that it covered "all fees and expenses allowed pursuant to the Interim Fee Orders, and incurred prior to the termination date." This is the interpretation that the Bankruptcy Court gave it.

---

evidence to determine whether there is an ambiguity"). There is no briefing about the law when the parties make no such request.

[6] Law firm's attorney: "Objection, Your Honor. He's testifying to hearsay." D.I. 951, p. 46. SOF's attorney: "Objection, Your Honor. I was prevented from testifying. I think [the law firm attorney] likewise is testifying." *Id.*, p.54.

**The Dollar for Dollar Reduction.**

Having determined that the "carve-out" is the lesser of $6.33 million or the allowed fees, and that $6.33 million is the lesser of those two figures, there still remains the issue of whether there is credit for the interim fees paid. This is where the other cited provision of the Final DIP Order comes in. It provides that, "[T]he Debtors are hereby authorized, subject to the Budget, to incur the DIP Loan to pay the Carve-Out when due and payable." The only reasonable interpretation of this provision is that it authorized the debtors to pay the attorneys' fees authorized by the Interim Fee Orders, so long as the Interim Fee Orders did not exceed the budgeted amount ($6,332,895). Once the budgeted amount was reached, the carve-out was exhausted.

**Conclusion in Nos. 12-61, 12-62, and 12-64.**

The Bankruptcy Court's interpretation reasonably construed the language of the Final DIP Order. The interpretation was consistent with the representation to the Court at the time the Final DIP Order was signed, consistent with the "Carve-Out" as set forth in the Financing Agreement, consistent with the Interim DIP Order's "cap" to attorneys' fees, and consistent with the budget that was contemporaneously presented with the Final DIP Order, as a part of the package attached to the Final DIP Order. "[A] provision in a [court order] is ambiguous only when, from an objective standpoint, it is reasonably susceptible to at least two different interpretations." *United States v. State of New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999). In my opinion, the Final DIP Order is not ambiguous. I do not believe that it is reasonably susceptible to the interpretation that the law firms argue for, that is, that notwithstanding the clear intent to provide a cap on attorneys' fees, the agreement should be interpreted so as to provide no meaningful cap on attorneys' fees.

Thus, the appeals in Nos. 12-61, 12-62, and 12-64 will be denied, and the order appealed from – the Order Denying Motions of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order Determining the Scope of the Carve-Out – affirmed.

**The Appeal in No. 12-60.**

SOF's appeal challenges the adequacy of the Bankruptcy Court's explanation for granting the fee petitions. In short, the Bankruptcy Court did not purport to explain its ruling, although the Court did comment that, "the professionals who have worked on this matter have been effective." (D.I. 951, p.60). The Bankruptcy Court was intimately familiar with this case, and there is no evidence that the Bankruptcy Court did not fulfill its duties to review the fee applications. On the other hand, the amount of the fees was vigorously challenged (D.I. 909, pp. 24-29), and other than the "effective" remark, there is no explanation for the Court's ruling. SOF's argument is based on Bankruptcy Rules 7052 & 9014, the general argument being that objections to the amount of attorneys' fees is a "contested matter" and therefore requires that a decision include findings of fact and conclusions of law.

In the Bankruptcy Court, SOF made clear that it was waiving any argument that the law firms be required to disgorge any fees already paid to them. Thus, at the time of the Bankruptcy Court's decision, the only matter that was in actual dispute was whether sufficient additional fees would be allowed so that the remaining sum that was actually available (that is, $27,802) would have to be paid. Since this amount was dwarfed by the requested fees, there was no need for detailed explanation. At oral argument in this Court, SOF agreed that if I affirmed the Bankruptcy Court's order at issue in the law firms' appeals, SOF's appeal was "moot." (No. 12-60, D.I. 22, p. 80). Undoubtedly, SOF's concession was more in the nature of a practical one than a legal one, since I do not think it would in a legal sense moot the appeal. Rather, I

understand SOF's position to be that, contingent upon its being successful in the other appeals, it would withdraw its appeal in this one, in light of fairly negligible amount of money at issue. Thus, I will dismiss the appeal in No. 12-60 as withdrawn.

An order consistent with this opinion will be entered.